Approved: _____   ORIGINAL
Marcia S. Cohen
Assistant United States Attorney

Before: HONORABLE PAUL E. DAVISON
United States Magistrate Judge
Southern District of New York

- - - - - - - - - - - - - - - - - - - x  COMPLAINT

UNITED STATES OF AMERICA  : Violations of
: 18 U.S.C. § 2422(b)
-v.- :
: COUNTIES OF OFFENSE:
CRISTIN GILL, : Orange County and
Defendant. : Westchester County

20mj2114

- - - - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

Jessica Miller, being duly sworn, deposes and says that she is a Special Agent with the Federal Bureau of Investigation ("FBI") and charges as follows:

COUNT ONE

Between at least on or about January 9, 2020 up to and including on or about January 10, 2020, in the Southern District of New York and elsewhere, CRISTIN GILL, the defendant, using facilities and means of interstate and foreign commerce, unlawfully, willfully, and knowingly persuaded, induced, and enticed, and attempted to persuade, induce, and entice, an individual who had not attained the age of 18 years to engage in sexual activity for which a person can be charged, to wit, GILL, in online communications, persuaded, induced, and enticed a 16-year-old minor ("Victim-1") to travel from her home in Pennsylvania, through Orange County, New York, to meet GILL at hotel in Queens, New York, where they engaged in sexual activities.

(Title 18, United States Code, Section 2422(b).)

COUNT TWO

From on or about February 19, 2020 up to and including on or about February 24, 2020, in the Southern District of New York and elsewhere, CRISTIN GILL, the defendant, using facilities and means of interstate and foreign commerce, unlawfully, willfully, and knowingly attempted to persuade, induce, and entice an individual who had not attained the age of 18 years to engage in sexual activity for which a person can be charged, to wit, GILL, in online communications, attempted to persuade, induce, and entice an undercover officer posing as Victim-1 to meet him for the purpose of engaging in sexual activity.

(Title 18, United States Code, Section 2422(b).)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

1.  I am a Special Agent with the Federal Bureau of Investigation ("FBI"), assigned to the FBI New York Hudson Valley Resident Agency. I have been a Special Agent with the FBI since 1990. I have participated in investigations involving crimes against children, including the receipt, possession, and/or distribution of child pornography by electronic means, sexual exploitation, and enticement of minors. I have gained expertise in these areas through training and daily work related to conducting these types of investigations.

2.  I have been personally involved in the investigation of this matter. This affidavit is based upon my conversations with law enforcement officers and others, and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

3.  On or about February 11, 2010, I spoke to an investigator ("Investigator-1") with the Pike County District Attorney's Office in Milford, Pennsylvania, who advised the following, among other things:

    a.  On January 10, 2020, the parents of a 16-year-old female discovered that their daughter ("Victim-1") was missing

from their residence in Matamoras, Pennsylvania and contacted the Eastern Pike Police Department in Matamoras, Pennsylvania.

      b.    The Eastern Pike Police Department tracked Victim-1's cellphone to a location in Queens, New York.

      c.    Victim-1's parents advised the police that they believed Victim-1 might be with an adult male known to Victim-1 as "Cris."

      d.    At approximately 11 p.m. on January 10, 2020, Victim-1 contacted her parents by text. Thereafter, her father picked her up from Penn Station, in New York.

      e.    Victim-1's parents provided Victim-1's cellphone ("Phone-1") to the Pike County District Attorney's Office and consented to a search of Phone-1.

4.    On or about February 16, 2020, I interviewed Victim-1. Victim-1, whose date of birth is in July 2003 and who is now 16 years old, advised the following, among other things:

      a.    Victim-1 began communicating online with "Cris" approximately two years ago when she was 14. Although she initially told "Cris" she was 18, after a couple of weeks, she told him that she was 14.

      b.    Victim-1 and "Cris" communicated online via Instagram and also by text. "Cris"'s Instagram name is "maruchanstocks." They also sometimes spoke by phone. "Cris" was Victim-1's boyfriend and she referred to him as "husband" and "husban."

      c.    On numerous occasions, "Cris" expressed interest in meeting Victim-1 in person and they made numerous plans to meet, but, until January 10, 2020, Victim-1 never followed through with their plans to meet.

      d.    On January 9, 2020, at approximately 9 p.m., "Cris" told Victim-1 that if she did not meet him in New York, her relationship with him would be over. Victim-1 told "Cris" that she was in Brooklyn, New York, and would travel from Brooklyn to meet him. Victim-1 told "Cris" that she lived in Brooklyn because she did not want him to know her true residence in Pennsylvania.

e. On January 10, 2020, Victim-1 left her residence in Matamoras, Pennsylvania, walked to the Port Jervis, New York train station, and took a 4:30 a.m. train to Penn Station in Manhattan. There, she contacted "Cris," who sent a car to pick her up. The car "Cris" sent for her took her to a motel which Victim-1 identified by name ("Motel-1") in Queens, where she met "Cris."

f. Upon entering the hotel room, "Cris" hit Victim-1 in the arm and slammed her onto the bed in the room. Thereafter, he had sexual intercourse with her on three occasions and also required her to use her mouth on his penis on three occasions. On one occasion, while she was on top of him with her mouth on his penis, she observed that he was holding his phone over her with the flashlight on.

g. At approximately 11 p.m., after approximately 13 hours in the hotel room, Victim-1 left the hotel room via a ridesharing service to Penn Station that "Cris" paid for.

h. Following the events on January 10, 2020, Victim-1's parents took her cellphone and gave Victim-1 a different cellphone to use ("Phone-2"). "Cris" contacted Victim-1 via Instagram and Victim-1 used Phone-2 to communicate with him. During these communications, they discussed meeting again.

5. During my interview of Victim-1, I showed Victim-1 a photograph ("Photo-1") of CRISTIN GILL, the defendant, that I had obtained from New York City police department records. Victim-1 said that Photo-1 was of "Cris" but that he is heavier now. The records I reviewed indicate that GILL was born in December 1992, making him 27 years old today.

6. Based on my conversations with Investigator-1, I am aware that, on or about February 13, 2020, Victim-1's parents provided Phone-2 to the Pike County District Attorney's Office and provided consent for a search of the phone. In addition, Victim-1's parents provided the passwords for Victim-1's Instagram account and the two phones. On or about February 13, 2020, I obtained Phone-1 and Phone-2 from the Pike County DistrictAttorney's Office.

7. Using Victim-1's Instagram password, the FBI was able to retrieve a number of messages Victim-1 exchanged with "maruchanstocks" via Instagram. I have reviewed the retrieved Instagram chats and, based on these chats, I am aware of the following:

4

a. There are numerous messages exchanged via Instagram between Victim-1 and "maruchanstocks" between June 19, 2019 and February 2020. The last messages from Victim-1 to "maruchanstocks" were sent on February 12, 2020. There were messages from "maruchanstocks" on February 13, 2020.

b. In numerous messages, Victim-1 and "maruchanstocks" stated that they love one another.

c. On June 21, 2019, "maruchanstocks" told Victim-1, "I missed you for so long" and "I hope you know that when I see you were spending the day together." Victim-1 responded, "me too iii and yiswemust." "Maruchanstocks" responded, "so we need to get a meal cause I have to feed you," "we gotta walk around and hold hands like gays," "And then we sleep together," and "Simple and sweet."

d. On January 9, 2020, at approximately 6:42 p.m. "maruchanstocks" told Victim-1, "Either I can walk away forever and not because I don't love you but because I know I don't matter enough to you for you to make the effort for me." Victim-1 responded, "You don't love me?" "Maruchanstocks" responded, "I didn't say that," "I said," "I walk away forever because I don't matter to you," "Not because I don't love you," and "I do love you."

e. On January, 9, 2020 at approximately 7:57 p.m., "maruchanstocks" said, "I love you allat." At approximately 7:58 p.m., "marchuanstocks" said, "But if you don't want to work things out what can I do." Victim-1 responded "I wanted it to." "Maruchanstocks" replied, "Then prove it" and "Stop talking and do the right thing." At 7:59 p.m., Victim-1 asked, "OK where will u be." "Maruchanstocks" replied, "Queens." Victim-1 said, "OK ill tell you when im there and ill wait." At 8:00 p.m., "maruchanstocks" said, "If you lie this time" and "That's it." At approximately 8:19 p.m., "maruchanstocks" said, "So tonight if I tell you to do something will you?" Victim-1 said, "yeah." "maruchanstocks" said, "You sure?" Victim-1 responded, "yeah."

f. At approximately 10:55 p.m. on January 9, 2020, "maruchanstocks" asked, "Where are you exactly" and, at 10:59 p.m., "?" Victim-1 responded, "im in crown heights." At 1:33 a.m. on January 10, 2020, "maruchanstocks" sent Victim-1 an address in Howard Beach ("Address-1"), New York and asked "how far are you from there."

5

g. At 1:12 a.m. on January 10, 2020, "maruchanstocks" asked "Where are you?" Victim-1 responded at 1:19 a.m., "east ny." At 1:33 a.m., "maruchanstocks" sent Address-1 to Victim-1 and asked how far she was from Address-1. Victim-1 responded, "about 2 hours." "Maruchanstocks" suggested that they get her a cab and she declined and said she was walking.

h. At 5:41 a.m. on January 10, 2020, "maruchanstocks" said, "You wasted my time I've been asking you to take a [car service] from there and you don't listen." Victim-1 replied, "i just thought i could walk." "Maruchanstocks" said, "FOR THE LAST TIME YOUR PLANS SUCK." (capitals in original).

i. At 6:10 a.m. on January 10, 2020, Victim-1 told "maruchanstocks" that she was almost at Penn Station. At 6:20 a.m., "maruchanstocks" instructed Victim-1 to find an address. At 7:08 a.m., Victim-1 provided an address on 8th Avenue. At 7:13 a.m., "maruchanstocks" said that he would now have "to go to work exhausted" because of her. At 7:40 a.m., "maruchanstocks" said "I literally said let me pay for your cab here" and "You're the dumb ass that went to pen station."

j. At 7:54 a.m. on January 10, 2020, "maruchanstocks" said, "Look here's the deal then" and "If you see me today your giving me head," "And your getting slapped," and "And your leaving after." Victim-1 replied, "okay…" At 7:55 a.m., "maruchanstocks" said, "Find the fucking exact address." Victim-1 provided the same address she'd previously sent. "Maruchanstocks" replied that it would be "77 fuckinh dollars." At 8:17 a.m., "maruchanstocks" provided a screen shot indicating a make and model of car and license plate and said, "1 min away." Victim-1 replied, "okay thank you." Thereafter, the communications between Victim-1 and "marchuchanstocks" indicate that Victim-1 did not find the car, that the car waited and then left, and that "maruchanstocks" was charged a penalty of $5. The communications indicate that "maruchanstocks" sent a second car for Victim-1 and that the car arrived at approximately 9:10 a.m. At approximately 9:18 a.m., "maruchanstocks" told Victim-1, "OK listen the room number is 2a" and instructed her to "just knock."

k. At 11:38 p.m. on January 10, 2020, "maruchanstocks" said, "So we're going to be ok after tonight you think?" and, at 11:58 p.m., "I love you." At 12:01 a.m. on January 11, 2020, Victim-1 told "maruchanstocks," "and i am at penn station now everything went good." At 12:20 a.m. on January 11, 2020, "maruchanstocks" wrote, "If we work at it things will be better."

6

1. Between January 11, 2020 and February 12, 2020, there are numerous messages between Victim-1 and "maruchanstocks" in which they, among other things, express their love for one another and discuss another meeting.

8. On or about February 13, 2020, after logging into Victim-1's Instagram account, I sent a message to "Cris" advising him that my mom had taken my phone and that he shouldn't contact me until I was able to reach out.

9. I have reviewed records from a motel ("Motel-1") that is located at Address-1. The records indicate that on January 10, 2020, someone with the name "Gill" paid $189 in cash for room 2A at Motel-1.

10. On or about February 19, 2020, at my direction, an FBI agent ("UC-1") acting in an undercover capacity and pretending to be Victim-1, resumed communications with "maruchanstock" via Victim-1's Instagram. During these communications, some of which occurred while UC-1 was in Westchester County, UC-1 told "maruchanstock" that she only had wifi access to communicate with him. UC-1 told "maruchanstock" that she could meet him on Monday, February 24, 2020 if he could get her a ride from Grand Central Station. In communications on February 20, 2020, UC-1 asked if he could bring condoms and "maruchanstock" said "Sure." During communications on February 22, 2020, "maruchanstock" provided UC-1 with an address on 10th Avenue at which the car he would send would pick her up. UC-1 said that she would contact him when she arrived at Grand Central Station.

11. On February 23, 2020, UC-1 communicated with "maruchanstocks" and they confirmed that they would see each other the following day.

12. This morning, at approximately 4:53 a.m., UC-1 told "maruchanstocks," "ok, i purrmise i won't let you down. ill let you know." At 4:53, he responded "Good" and at 4:54, he sent a kissing emoji. At 9:43 a.m., "maruchanstock" wrote "How's it going?" UC-1 responded at 10:05 a.m., "great, just got into the city, can't wait to see you!!!" "Maruchanstock" sent a smiley face emoji at 10:05 a.m. At approximately 10:30 a.m., UC-1 wrote "can't wait to be with you." "Maruchanstock" responded at 10:30 a.m., "Now go find some place to go get picked up from." At 10:48 a.m., UC-1 sent a photo of the corner of 10th Avenue and West 34th Street. Thereafter, "maruchanstocks" sent back an address on 10th Avenue and asked if he should send a car to that

7

address. At 10:56 a.m., "maruchanstocks" sent a screen shot indicating the make, model and license plate of the car that would be there in 1 minute. The screen shot also indicated that the destination was Motel-1. At 10:57 a.m., "maruchanstocks" said "The room number is 26." At approximately 11:57 a.m., UC-1 told him, "im in the lobby" and he said "Come up."

13. At approximately 12:07 p.m., an FBI agent posing as an employee from Motel-1 called Room 26 and told the individual who answered that the motel needed him to switch rooms and requested that he come downstairs. At approximately 12:10 p.m., CRISTIN GILL, the defendant, came down the backstairs of Motel-1 that lead to the lobby. I recognized GILL from Photo-1 and he was placed under arrest. At the time of his arrest, GILL was carrying a black and white backpack over his shoulders. A search of GILL's person incident to his arrest revealed that GILL had three silicone rings and two cellphones on his person. Based on my experience and training, I recognize the silicone rings as "cock rings," which are rings worn around the base of a penis to restrict blood flow from an erect penis in order to maintain an erection or produce a stronger erection.

14. While being transported to White Plains, New York, CRISTIN GILL, the defendant, waived his *Miranda* rights and agreed to speak to me and other agents. GILL initially stated, in substance and in part, that he had met Victim-1 on an online dating site and had gone to a pizzeria with her in Brooklyn. He stated that he believed Victim-1 was 16, 17, 18 or 19 and said that she had given him different ages at different times. He denied having any sexual activity with Victim-1 and denied ever meeting her at any motel. When I advised GILL that I believed he was not being truthful with us, he stated, "You're right. I'm fucked anyway. I'm going to do time. I'm going to have to register as a sex offender." Thereafter, GILL admitted

that he had gone to Motel-1 with Victim-1 and he admitted that Victim-1 had placed her mouth on his penis.

WHEREFORE, deponent prays that the above-named defendant be arrested and imprisoned or bailed as the case may be.

_____
JESSICA MILLER
Special Agent
Federal Bureau of Investigation

Sworn to before me this
25th day of February, 2020

_____
Honorable Paul E. Davison
United States Magistrate Judge